IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION



| | |
|---|---|
| **KEVIN LANGFORD,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 5:21-CV-632-LCB |
| | ) |
| **ASPEN DENTAL** | ) |
| **MANAGEMENT, INC.** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Kevin Langford, alleges as follows against Defendant, Aspen Dental Management, Inc. ("Aspen"):

### INTRODUCTION

1.  Aspen discriminated and retaliated against Plaintiff based on his race in violation of 42 U.S.C. § 1981. This action seeks equitable relief and damages.

### PARTIES

2.  Plaintiff is an African-American male.

3.  Plaintiff is a citizen of the United States and a resident of Madison County, Alabama.

4.  Aspen is a foreign corporation incorporated in the State of Delaware. Aspen is authorized to conduct business in the State of Alabama. Aspen conducted business in its own name

in the Northern District of Alabama at all times relevant to the statutory violations made the basis of this suit and otherwise meets the definitional requirements of 42 U.S.C. § 2000e.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant 42 U.S.C. § 1981 as the claims pled *infra* involve a question of federal law.

6. This Court maintains subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202.

7. This Court has personal jurisdiction over Aspen. Aspen does business in this district and was Plaintiff's employer at all times relevant to this action.

8. Venue is proper in this Court, pursuant to 27 U.S.C. § 1391(a)(2), with respect to Aspen, as this is the judicial district in which a substantial part of the events which have given rise to the claims pled *infra* occurred.

## FACTUAL ALLEGATIONS

9. Aspen operates as a dental practice management company and manages branded dental practices throughout the United States, including in Alabama, offering dental check-ups, periodontics, cosmetic dentistry, dental crowns, dental bridges, dental procedures, and denture services.

10. Beginning May 21, 2018, Aspen hired Plaintiff to work as a "dental technician," and he completed his onboarding at Aspen's Cullman, Alabama location.

11. William Pedan ("Pedan"), a Caucasian male, was Plaintiff's "territory manager of lab support ("TMLS") and primary supervisor at all times relevant to this action.

12. Plaintiff remained at the Cullman location until he was transferred to work at Aspen's Decatur, Alabama on or about July, 2018.

13. On or about February 16, 2019, Allen Neisler ("Neisler") offered Plaintiff a promotion, which Plaintiff accepted, to "lead dental technician" at Aspen's new Madison, Alabama location. Neisler allowed Plaintiff to work as a "floater" until the Madison, Alabama location was ready to open on or about August 29, 2018.

14. Plaintiff worked at the Madison location for approximately two months upon opening. On or about November, 2018, Pedan hired a new dental technician, Bobby Kenney ("Kenney"), who was a Caucasian male, to work at the Madison location.

15. Pedan recruited Kenny in November, 2018, and told him that he "was trying to get rid of this black guy" at the Madison location.

16. On or about November, 2018, Pedan additionally hired Baviq Patel ("Baviq"), to work as a dental technician at the Madison location, and his wife, Tamana Patel ("Tamana"), as a new trainee at the Decatur location.

17. After Pedan hired Kenney, Baviq, and Tamana, Pedan demoted Plaintiff to a "floater" position without justification. As a result, Plaintiff was removed from the lead position at the Madison location, and Pedan promoted Kenney into Plaintiff's former position.

18. As a "floater," Plaintiff maintained similar duties and hours; however, his pay decreased from $27.00 per hour to $17.00 per hour. Plaintiff was also now required to travel between Aspen's locations as needed, including the Madison, Decatur, and Cullman locations.

19. In November, 2018, Plaintiff complained to Aspen's company director, Allen Neler ("Neler"), about his demotion. Neler decided that Plaintiff's pay should be restored, and that Plaintiff would be reassigned to lead the Huntsville, Alabama location when it was set to open in December, 2019. Neler's only condition for this reassignment was that Plaintiff pass a skill assessment test.

20.     Neler communicate the new role planned for Plaintiff and its conditions to Pedan. After Neler's decision, Plaintiff took and passed the assessment test in the presence of Jeffrey Smith ("Smith"), a Caucasian male who was the lead dental technician and trainer for the Decatur location, Dr. Narissa Ross ("Ross"), an African-American female who was the dentist assigned to the Decatur location, and Pedan.

21.     After Plaintiff passed the assessment, Pedan refused to communicate with Plaintiff regarding his new position and never restored Plaintiff's pay as Neler directed.

22.     Plaintiff worked with Tamana whenever he was working the Decatur location as a floater. Tamana frequently made racially charged comments towards Plaintiff. For example, Tamana would tell Plaintiff that, "[y]ou black people can only sweep and mop my floors," or that she "[c]an't live around black people."

23.     On May 7, 2019, Tamana asked Plaintiff to train her to "set teeth," a process which involves placing teeth in wax to model the final denture product. Plaintiff refused this request because he was not permitted to train other employees on this skill. Instead, Plaintiff was only permitted to train employees on how to process and finish dentures. Tamana shouted offensive words at Plaintiff after he refused her training request and complained to Pedan about the incident. Pedan came to the Decatur location the same day to discuss Tamana's complaint. Pedan refused to talk to Plaintiff or Dr. Ross at this time.

24.     On May 8, 2019, Pedan sent Aspen's Regional Manager for Central, Alabama, who was a Caucasian female, to the Decatur location to terminate Plaintiff's employment.

25.     Shortly after in May, 2019, Dr. Ross wrote a letter to Aspen's human resources department regarding Tamana's demeaning and offensive conduct towards Plaintiff. Dr. Ross

indicated in her letter that she wanted Tamana removed from the Decatur office. In response, Pedan stated that Tamana would not be going anywhere.

26. Pedan fired two other African-American dental technicians—"Jeremy" (approximately one month before Plaintiff's termination) and "Brian" (approximately one week after Plaintiff's termination).

27. Unlike Plaintiff, Pedan did not demote or terminate other Caucasian dental technicians. For example, Sean Graham (Caucasian, male) was never demoted or terminated despite performance problems that would require other labs to fix his errors (a practice called "case sharing").

28. At all times relevant to this action, Plaintiff was qualified to perform his job and was satisfactorily performing his job.

29. After Plaintiff's termination, Aspen transferred and demoted Pedan to work as a dental technician at one of its labs in Tennessee.

## CAUSES OF ACTION
### Count I – 42 U.S.C. § 1981 Discrimination

30. Count I arises from the allegations pleaded *supra* at Paragraphs 1 through 29.

31. Aspen's conduct constituted disparate treatment and unlawful racial discrimination against Plaintiff because of his race in violation of § 42 U.S.C. § 1981.

32. Aspen's actions of discrimination against Plaintiff were intentional, performed with malice and/or with reckless disregard to Plaintiff's federally protected civil rights.

33. But for Plaintiff's race Aspen would not have demoted him to a "floater" position.

34. But for Plaintiff's race Aspen would not have reduced his pay to $17.00 per hour.

35. But for Plaintiff's race, Aspen would not have terminated Plaintiff's employment.

36. As a direct and proximate result of Aspen's violations of Plaintiff's federally protected civil rights, Plaintiff suffered and incurred substantial damages. These damages include lost wages, lost employee benefits, lost raises, diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, and other compensatory damages, in an amount to be determined by a jury and the Court.

37. Plaintiff further seeks punitive damages against Aspen for its willful and intentional violation of the law in such an amount which will punish it and deter others.

38. Aspen engaged in discrimination against Plaintiff on the basis of his race with malice or reckless indifference to Plaintiff's rights under 42 U.S.C. § 1981.

39. Aspen's conduct constituted unlawful discrimination against Plaintiff in terms, conditions, and privileges of employment on the basis of his race in violation of 42 U.S.C. § 1981.

40. Plaintiff has and will continue in the future to suffer pecuniary losses as a direct result of Aspen's violation of 42 U.S.C. § 1981.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully requests that the Court:

(A) assume jurisdiction over this action;

(B) declare that the acts and omissions described herein violated Plaintiff's federally protected civil rights;

(C) enjoin Aspen from engaging in such conduct;

(D) award Plaintiff back pay and benefits from the date of his termination;

(E) award Plaintiff compensatory damages against Aspen that will fully compensate his mental distress, anguish, pain, suffering, and concern that he has suffered as direct and

proximate result of the statutory and common law violations of Aspen as set out herein;

(F) enter a judgment against Aspen for such liquidated and punitive damages sufficient to punish Aspen for its statutory and common law violations perpetrated upon Plaintiff, in an amount that will serve as a deterrent to Aspen and other from engaging in similar conduct in the future;

(G) award Plaintiff his costs, disbursements, and attorney's fees;

(H) enter judgment in favor of Plaintiff for appropriate declaratory relief regarding the unlawful acts and practices of Aspen;

(I) enter judgment in favor of Plaintiff against Aspen for such other and further relief to which Plaintiff may show himself justly entitled.

Respectfully submitted this the 4th day of May, 2021.

/s/ Philip M. DeFatta
Philip M. DeFatta (ASB-9307-R74F)
WATSON MCKINNEY, LLP
*Attorney for Plaintiff*
200 Clinton Ave. W., Suite 110
Huntsville, Alabama 35801
(256) 536-7423 phone
(256) 536-2689 fax
defatta@watsonmckinney.com

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

/s/ Philip M. DeFatta
Philip M. DeFatta

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

Aspen Dental Management, Inc.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104